**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANTHONY MEYER** and
**JOSEPH MEYER,**

     **Plaintiffs,**    **1:08-cv-1136**
                **(GLS/RFT)**

   **v.**

**DONALD MEYER,** individually and as
Trustee of the Richard Thomas and
Margaret Josephine Meyer Living Trust,
and **LINDA MEYER,**

     **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFFS:** | |
| Cahill, Gordon Law Firm | THOMAS J. KAVALER, ESQ. |
| 80 Pine Street | LAURA FRAHER, ESQ. |
| 17th Floor | MEGAN E. CREMINS, ESQ. |
| New York, NY 10005 | PATRICIA FARREN, ESQ. |
| | |
| **FOR THE DEFENDANTS:** | |
| McPhillips, Fitzgerald Law Firm | W. BRADLEY KRAUSE, ESQ. |
| 288 Glen Street | |
| P.O. Box 299 | |
| Glens Falls, NY 12801-0299 | |

**Gary L. Sharpe**
**District Court Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiffs Anthony and Joseph Meyer commenced this action against

defendant Donald Meyer, individually and as Trustee of the Richard

Thomas and Margaret Josephine Meyer Living Trust, for breach of fiduciary

duty, and against Donald and Linda Meyer for conversion, unjust

enrichment, and the imposition of a constructive trust.  (*See* Compl., Dkt.

No. 1.)  Pending are Anthony and Joseph Meyer's motion for summary

judgment, and Donald and Linda Meyer's cross-motion for summary

judgment.  (Dkt. Nos. 28, 31.)  For the reasons that follow, both parties'

motions are denied.

### **II. Background**

### **A.    Factual History**

On June 16, 1996, Richard Meyer, Sr. and his wife, Margaret Meyer,

created the Richard Thomas and Margaret Josephine Meyer Living Trust,

which they subsequently amended on August 11, 1998.  (*See* Pl. SMF ¶

11, Dkt. No. 28:3.)  Article II of the Agreement, as amended, provides:

> The net income may be distributed in monthly or other
> convenient installments to or for the benefit of [Richard Meyer,
> Sr.] and [Margaret Meyer] during their lives, and thereafter to or

2

for the benefit of the survivor during his or her life, as needed,
together with all or any portion of the principal [of the Trust] as
the Settlors may from time to time request.  Any net income not
distributed shall be added to the principal of the trust.

If at any time or times both the Settlors, or the surviving
Settlor is under legal disability or by reason of illness or
physical disability ... is unable to properly manage the Settlor's
affairs, the Trustee shall use and expend for the benefit of the
Settlors, all or any portion of the net income and principal of the
trust at such time and in such manner as the Trustee may
deem advisable in the Trustee's sole and absolute discretion,
and any net income not distributed shall periodically be added
to and commingled with the principal of the trust.

The primary purpose of this trust is to provide for the
income beneficiaries (Settlors), and the rights and interests of
remaindermen are subordinate and incidental to the purpose.
The provisions of this trust shall be construed liberally in the
interest and for the benefit of the income beneficiaries.

(Farren Decl., Ex. D, Trust Agreement at 2-3, Dkt. No. 28:2.)  Article III,

which addresses the manner in which the income and principal of the trust

should be distributed upon the settlors' deaths, reads:

A.    From and after the death of the first Settlor, the Trustee
      shall continue to hold, administer, manage and dispose of
      the trust estate for the benefit of the surviving Settlor, and
      the income and principal of [the] trust estate shall
      continue to be held and distributed as set out in Article II
      ....

B.    Upon the death of the surviving Settlor, the Trustee shall
      distribute the net trust estate, as then constituted,
      together with any amounts which may be added thereto, if

3

any, from whatever source, as follows:

1.    The sum of one hundred thousand 00/100 dollars ($100,000.00) to Merrill Lynch Trust Company, as Trustee of the Richard Thomas Meyer Jr. Trust, for the benefit of the Settlors' son, Richard Thomas Meyer, Jr., to be held and administered pursuant to the terms of the Richard Thomas Meyer, Jr. Trust as set forth in Paragraphs C and E below.

2.    All the rest, residue and remainder shall be distributed in the following manner:

    a.    Fifty percent (50%) to Merrill Lynch Trust Company, as Trustee of the Richard Thomas Meyer Jr. Trust, for the benefit of Settlors' son, Richard Thomas Meyer, Jr., to be held and administered pursuant to the terms of the Richard Thomas Meyer, Jr. Trust ....

    b.    Fifty percent (50%) to Merrill Lynch Trust Company, as Trustee of the Donald William Meyer Trust, for the benefit of Settlors' son, Donald William Meyer, to be held and administered pursuant to the terms of the Donald William Meyer Trust as set forth in paragraphs D and E below.

C.    <u>Richard Thomas Meyer Jr. Trust:</u> The Trustee ... shall hold this trust for Richard Thomas Meyer, Jr., as beneficiary, as follows:

1.    The Trustee shall manage the trust fund and shall pay to or apply for the benefit of the beneficiary, Richard Thomas Meyer, Jr., in monthly or other convenient installments, so much of the net income and so much of the principal of the trust estate as

4

the Trustee deems advisable for the proper health, education, maintenance, and support of the beneficiary.  That discretion shall be exercised after taking into consideration all other income and cash resources known to the Trustee that are available to the beneficiary from sources outside of this trust.  An invasion of principal may be made even though it results in termination of the trust.

2.    Upon the death of Richard Thomas Meyer, Jr., this trust shall terminate, and the Trustee shall distribute the remaining trust assets, if any, as follows:

a.    Fifty percent (50%) to his wife, Laurie Meyer, if living, and if not to his sons, Joseph Meyer and Anthony Meyer, in equal shares, per stirpes;

b.    Twenty five percent (25%) to his son, Joseph Meyer, per stirpes; and

c.    Twenty five percent (25%) to his son, Anthony Meyer, per stirpes.

D.    <u>Donald William Meyer Trust:</u> The Trustee ... shall hold this trust for Donald William Meyer, as beneficiary, as follows:

1.    The Trustee shall manage the trust fund and shall pay to or apply for the benefit of the beneficiary, Donald William Meyer, in monthly or other convenient installments, so much of the net income and so much of the principal of the trust estate as the Trustee deems advisable for the proper health, education, maintenance, and support of the beneficiary.  That discretion shall be exercised after taking into consideration all other income and cash resources known to the Trustee that are available to

> the beneficiary from sources outside of this trust.
> An invasion of principal may be made even though
> it results in termination of the trust.

> 2.   Upon the death of Donald William Meyer, this Trust
>       shall terminate, and the Trustee shall distribute the
>       remaining trust assets, if any, to his Donald's wife,
>       Linda Meyer, per stirpes.

(*Id.* at 3-6.)  The Agreement names Richard Meyer, Sr. as the trustee, and

stipulates that upon his death Merrill Lynch Trust Company would act as

successor trustee, and as trustee to the Richard Thomas Meyer, Jr. Trust

and the Donald William Meyer Trust.  (*See id.* at 11-12.)  And in defining

the trustee's liability, Article VII of the Agreement states:

> The Trustees shall be responsible only for due diligence in the
> administration and disbursement of any trust created hereunder
> and shall not be responsible for any loss or subject to any
> liability except by reason of their own negligence or willful
> default proved by affirmative evidence, and every election,
> determination or other exercise by the Trustees of any
> discretion granted to them, expressly or by implication under
> this Agreement or by law made in good faith, shall fully protect
> them and shall be conclusive and binding upon all persons
> interested in any trust created under this Agreement.

(*Id.* at 10.)  Lastly, Article VIII stipulates that "[a]fter the death of the

husband, Richard Thomas Meyer, this Trust Agreement shall become

irrevocable."  (*Id.*)

Richard Sr. died on February 28, 1999.  (*See* Pl. SMF ¶ 15, Dkt. No.

6

28:3.)  Shortly thereafter, on March 25, 1999, Margaret Meyer appointed

Donald Meyer as the sole trustee of the Trust, whereby Merrill Lynch Trust

Company withdrew as trustee.  (*See id.* at ¶¶ 16-17.)  Margaret died on

August 28, 2000.  (*See id.* at ¶ 24.)  She was survived by Donald and

Richard Meyer, Jr.  (*See id.* at ¶¶ 25-26.)

Pursuant to his responsibilities as trustee, Donald commissioned

Jonathan Mandwelle, CPA, to prepare a final accounting of the Trust

assets and activities for the periods of March 25, 1999, to August 28, 2000,

and August 29, 2000, to December 2008.  (*See id.* at ¶ 18; *see also* Farren

Decl., Exs. A, B, C, Dkt. No. 28:2.)  From October 1999 to August 2000,

Donald, as trustee, authorized the expenditure of $52,708.75 of Trust

assets allegedly for the benefit of himself and his wife, Linda.  (*See* Pl.

SMF ¶¶ 20-21 and Table A, Dkt. No. 28:3; *see also* Def. Resp. SMF ¶¶ 20-

21, Dkt. No. 36.)  During an overlapping period, March 1999 to August

2000, Donald, as trustee, authorized the expenditure of $67,364.09 in Trust

assets also for his and his wife's alleged benefit.  (*See* Pl. SMF ¶¶ 22-23

and Table B, Dkt. No. 28:3.)

However, following Margaret's death, Donald did not create and fund

the two trust accounts as directed to under the Agreement.  (*See id.* at ¶

7

26.)  Rather, he left all Trust assets in the original Trust accounts.  (*See id.*)

On December 15, 2000, Richard Jr. died, and was survived by his sons,

Anthony and Joseph Meyer, and his ex-wife, Laurie Meyer.  (*See id.* at ¶¶

27-28.)  Yet, for the next two years, Donald did not distribute the assets

that were payable to Anthony and Joseph as remaindermen to the Trust.

(*See id.* at ¶ 29.)  Instead, Donald, as trustee, continued to retain control

over the Trust's assets and did not liquidate any of the invested assets.

(*See id.* at ¶ 30.)

According to Anthony and Joseph, the gross value of the Trust assets

at the time of Richard Jr.'s death in December 2000 was $541,911.44.

(*See id.* at ¶ 38.1.)  This calculation is based on the December 2000 value

of the Trust's investments amounting to $378,970.28; three lots of real

property owned by the Trust valued at $36,154.00;[1] $6,714.32 in

subsequently-received assets; and the $52,708.75 and $67,364.09

amounts that Donald authorized to be expended for his and his wife's

benefit,[2] but which Anthony and Joseph contend were unauthorized

---

[1]Donald disputes the asserted value of the real property, claiming that the value in 1999 was only $13,200.00.  (*See* Def. Resp. SMF ¶ 51, Dkt. No. 36.)

[2]It is unclear to what extent Donald and Linda admit that these expenditures were made for their benefit.  Donald and Linda admit that the $52,708.75 of expenditures were made for their benefit, (*see* Def. Resp. SMF ¶ 21, Dkt. No. 36), but dispute how much of the $67,364.09

expenditures that should be reimbursed to the Trust.  (*Compare id.*, *with* Def. SMF ¶ 38.1, Dkt. No. 36.)  While Anthony and Joseph acknowledge that as of December 2000 the Trust had liabilities of approximately $73,084.53, they estimate that the net value of the Trust assets in December 2000 was approximately $468,826.91.  (*See* Pl. SMF ¶¶ 38.2, 38.3, Dkt. No. 28:3.)  They also admit that between 2002 and 2007, Donald disbursed $166,500.00 to them and their mother, Laurie.[3]  (*See id.* at ¶¶ 35, 36, 38.5.)  Therefore, pursuant to the directions of the Trust Agreement, Anthony and Joseph assay their remaining entitlement to be $117,913.45, which equals $100,000 plus one-half of $368,826.91 minus $166,500.00. (*See id.* at ¶¶ 38.4, 38.5.)

Donald contends that $166,500.00 is the full amount that Anthony and Joseph are entitled to under the Trust, and that he has therefore made every distribution that the Agreement directed him, as trustee, to make. (*See* Def. Resp. SMF ¶ 45.9, Dkt. No. 36.)  He further argues that although he was required as trustee to distribute the Trust assets in accordance with Article III, he was not obligated to liquidate any invested assets upon the

---

was actually expended for their benefit, (*see id.* at ¶¶ 23, 38.1(e)).

   [3]Following her death, the administrator of Laurie's estate assigned all of her interest in any Trust assets to Anthony and Joseph.  (*See* Pl. SMF ¶ 13, Dkt. No. 28:3.)

death of Richard Jr.  (*See id.* at ¶ 40.1.)  In response, Anthony and Joseph

argue that while the Agreement does not contemplate liquidation of Trust

assets in order to finance the residual trust of Richard Jr., the Trust

accounts at the time of Margaret's death could not have yielded the sum of

$100,000 without liquidation.  (*See* Pl. Reply SMF ¶ 3, Dkt. No. 42.)

As to the disputed $52,708.75 and $67,364.09 expenditures, Donald

contends that each underlying transaction was conducted by and passed

through the Trust, and that the purpose of the transactions were to benefit

Richard Sr. and Margaret.  (*See* Def. Resp. SMF ¶ 42, Dkt. No. 36.)

Specifically, he alleges that Margaret expressly and verbally consented to

all of these transactions, and that Margaret "expressed the desire and wish

to financially assist [Donald and Linda] as they cared for her during the last

years of her life."  (*Id.* at ¶ 43.1; *see also id.* at ¶¶ 44.1-44.9 (outlining the

nature of Margaret's alleged requests).)  Donald also avers that Richard Jr.

orally consented to his holding the Trust assets in the same investment

accounts and managing the funds in the same manner as before

Margaret's death.  (*See id.* at ¶ 53.)  In response, Anthony and Joseph

contend that such transactions and expenditures were not appropriate

under the Trust Agreement, and that Donald and Linda have offered no

evidentiary proof of Margaret's alleged directives or authorizations.  (*See* Pl. Reply SMF ¶¶ 6-20, Dkt. No. 42.)  They make the same argument as to Donald's averment regarding Richard Jr.'s consent, namely, that there is no evidence supporting such an assertion, and that it was nonetheless inappropriate under the Trust Agreement.  (*See id.* at ¶ 38.)  Moreover, Anthony and Joseph raise questions as to whether Margaret was competent to authorize such expenditures at the time they were made, and whether the larger expenditures were actually necessary or related to caring for Richard Sr. and Margaret during their lifetimes.  (*See id.* at ¶¶ 7, 10-12.)

Donald also points to an underlying dispute that arose in August 2003 between Laurie, Donald, and Anthony and Joseph regarding who was entitled to Richard Jr.'s remaining interest in the Trust.  (*See* Def. Resp. SMF ¶ 45, Dkt. No. 36.)  Donald relies on this dispute and the consequent litigation as justifying his delay in, among other things, distributing the Richard Jr. Trust assets.  (*See id.* at ¶¶ 45.1-45.9.)  Anthony and Joseph insist that this argument is flawed for several reasons, including the fact that fifty percent of the Richard Jr. Trust assets unquestionably belonged to them under the Trust Agreement.  (*See* Pl. Reply SMF ¶¶ 26-27, Dkt. No.

42.)

## B.   Procedural History

On October 22, 2008, Anthony and Joseph filed suit against Donald and Linda, claiming that Donald breached his fiduciary duties and converted Trust assets for his and his wife's benefit, and that Donald and Linda were unjustly enriched.  (*See* Compl. ¶¶ 39-47, 54-58, Dkt. No. 1.) Accordingly, Anthony and Joseph seek compensation for the funds they were entitled to under the Trust Agreement and request that a constructive trust be imposed on any funds or assets still within Donald and Linda Meyer's control that can be traced to the Trust, including Donald and Linda's property, the premises of which they allegedly improved with funds from the Trust.  (*See id.* at ¶¶ 48-53, 59-63.)  Following discovery, Anthony and Joseph moved for summary judgment on December 15, 2009.  (*See* Dkt. No. 28.)  On February 5, 2010, Donald and Linda cross-moved for summary judgment.  (Dkt. No. 31.)

## III.  Standard of Review

The standard for the grant of summary judgment is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*,

499 F. Supp.2d 192, 194-95 (N.D.N.Y. 2007).

## IV.  **Discussion**[4]

### A.  **Subject Matter Jurisdiction**

As a threshold matter, Donald and Linda contend that the court lacks subject matter jurisdiction under 28 U.S.C. § 1332 because the "actual amount" in controversy does not exceed $75,000.  Under well-established law, this argument is without merit.

In evaluating whether the statutory jurisdictional amount has been met, the test is whether "the sum claimed by the plaintiff [in the complaint] is apparently made in good faith."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); *see also Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961).  "The fact that a plaintiff may not recover the minimum jurisdictional amount, or that a valid defense to the claim may

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[4]"A federal court sitting in diversity must apply the choice of law rules of the forum state," which here is New York. *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1538-39 (2d Cir. 1997) (citation omitted).  And under New York law, "courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Welsbach Elec. Corp. v. Mastec N. Am., Inc.*, 7 N.Y.3d 624, 629 (N.Y. 2006) (citation omitted); *see also Rousseau v. U.S. Trust Co. of N.Y.*, 422 F. Supp. 447, 460 (S.D.N.Y. 1976).  In light of the parties' assertions, the court will apply Florida substantive law to this dispute since Article XV(D) of the Trust Agreement stipulates: "All questions concerning the validity, construction and administration of this Agreement and any trust created hereunder shall be judged and resolved in accordance with the law of the State of Florida." (Farren Decl., Ex. D, Trust at 16, Dkt. No. 28:2; *see also* Pl. Mem. of Law at 9 n.3, Dkt. No. 28:4; Def. Resp. Mem. of Law at 3 n.1, Dkt. No. 37.)

exist, does not show the plaintiff's bad faith or oust the jurisdiction."

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.

1994) (internal quotation marks and citation omitted).  Consequently, a

party seeking dismissal must demonstrate that "from the face of the

pleadings, it is apparent, to a legal certainty, that the plaintiff cannot

recover the amount claimed or [that], from the proofs, ... the plaintiff never

was entitled to recover that amount ...."  *St. Paul Mercury*, 303 U.S. at 289.

However, "[e]vents occurring subsequent to the institution of suit which

reduce the amount recoverable below the statutory limit do not oust

jurisdiction."  *Id.* at 289-90.

Here, having considered Donald and Linda's averments as to what

Anthony and Joseph are actually entitled to, and finding the majority of

these averments premature, the court is satisfied that Anthony and Joseph

have adequately pleaded their entitlement to a monetary amount that

exceeds the amount-in-controversy requirement of $75,000.  Therefore, the

court denies Donald and Linda's motion to dismiss for lack of subject

matter jurisdiction.

**B.    Witness Competency and Choice of Law**

Preliminarily, the court is being called upon to determine the

14

admissibility of defendants Donald and Linda's testimony as to statements allegedly made by decedent Margaret.  Donald and Linda allege that during her last years, Margaret consented to and authorized Donald to use and expend Trust assets during the period between March 1999 and August 2000.  Anthony and Joseph contend that, in addition to being uncorroborated, these allegations constitute inadmissible hearsay.

In general, the admissibility of evidence, including whether a statement is hearsay,[5] is a procedural issue that is governed by the Federal Rules of Evidence.  *See Romine v. Parman*, 831 F.2d 944, 944-45 (10th Cir. 1987) (collecting cases); *see also* FED. R. EVID. 1101(b) ("These rules apply generally to civil actions and proceedings ...."); *Salsburg v. Maryland*, 346 U.S. 545, 550 (1954) ("Rules of evidence [are] procedural in their nature ...."); *see, e.g.*, *Cooper v. Memphis Area Med. Ctr. for Women, Inc.*, No. 04-2806, 2005 WL 5985551, at *3 (W.D. Tenn. Dec. 29, 2005). Nonetheless, the Federal Rules of Evidence "expressly provide that state law determines what rules will apply in civil actions governed by state law." *Rosenfeld v. Basquiat*, 78 F.3d 84, 88 (2d Cir. 1996) (citing FED. R. EVID.

---

[5]Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

601).  Specifically, Rule 601 advises courts presiding over civil matters that, "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."[6]  FED. R. EVID. 601.  For example, pursuant to Rule 601, federal courts sitting in diversity in New York State are obligated to give effect to New York's law "barring the testimony of certain interested witnesses."  *Rosenfeld*, 78 F.3d at 88 (citing H.R. REP. NO. 650 (1973), which notes that Rule 601 was amended to require the application of state competency rules to avoid "rendering inapplicable in the federal courts the so-called Dead Man's Statutes").  In this instance, though, because the Trust Agreement stipulates for the application of Florida as the substantive rule of decision, the issue of witness competency will be determined in accordance with Florida law. *See, e.g.*, *Clark v. Meyer*, 188 F. Supp.2d 416, 419 n.16 (S.D.N.Y. 2002) (treating dead man's statute as "a rule of substantive law rather than a

---

[6]There are two other limited exceptions where the Federal Rules of Evidence expressly provide for the application of state evidentiary laws: presumptions pursuant to FED. R. EVID. 302 and privileges under FED. R. EVID. 501.  *See Salas v. Wang*, 846 F.2d 897, 906 n.8 (3d Cir. 1988).  However, outside these narrow contexts, or those where substantive issues are intertwined, "the Federal Rules of Evidence, rather than state evidentiary laws, are held to apply in federal diversity proceedings."  *Legg v. Chopra*, 286 F.3d 286, 289-90 (6th Cir. 2002) (citations omitted); *see, e.g.*, *Mickle v. Christie's Inc.*, 214 F. Supp.2d 430, 432 (S.D.N.Y. 2002).

purely evidentiary principle," which requires court to apply statute of state whose rule of decision applies); *United Linen Wholesale, LLC v. Northwest Co.*, No. 06-CV-5934, 2009 WL 900152, at *2 (D.N.J. Mar. 31, 2009) (same); *Amell v. Kucewicz*, 53 F. Supp. 2d 145, 146-47 (D. Mass. 1999) (same).

Notwithstanding this preliminary conclusion, the court is not currently in a position to evaluate whether and to what extent the statements Donald and Linda allege Margaret made are admissible. The parties—particularly Donald and Linda—have only given this issue cursory treatment and have not addressed whether or how Florida law applies and what basis Donald and Linda have for offering the deceased's statements.[7] Accordingly, the court will disregard the alleged statements for present purposes.

## C.   **Breach of Fiduciary Duty**

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the

---

[7]For the most part, the parties have relegated this issue to footnotes. (*See* Pl. Mem. of Law at 12 n.4, Dkt. No. 28:4; Def. Resp. Mem. of Law at 6 n.3, Dkt. No. 37.) It is only in Anthony and Joseph's Reply Memorandum of Law that these evidentiary issues are developed and analyzed. (*See* Pl. Reply Mem. of Law at 11-15, Dkt. No. 41.) And while the court is inclined to agree with some of Anthony and Joseph's assertions, reaching a conclusion at this time as to admissibility would be neither appropriate in light of the parties' perfunctory arguments, nor necessary in light of the outstanding questions of fact.

proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002).  As a fiduciary, "[a] trustee has the duty to administer the trust diligently for the benefit of the beneficiaries." *Brigham v. Brigham*, 11 So. 3d 374, 386 (Fla. Dist. Ct. App. 2009) (citations omitted). Accordingly, a trustee is statutorily required to "administer the trust in good faith, in accordance with [the trust's] terms and purposes and the interests of the beneficiaries." FLA. STAT. § 736.0801.  In addition, a fiduciary is obligated to "invest and manage investment assets as a prudent investor would considering the purposes, terms, distribution requirements, and other circumstances of the trust."[8]  *Id.* at § 518.11(1)(a).

Here, the parties are in accord that Donald, as trustee, owed a fiduciary duty to the Trust and to its beneficiaries.  They dispute, however, whether Donald breached his fiduciary duty and whether Anthony and Joseph suffered any damage as a result.  Underlying these two disputes is a bounty of material issues of fact that countenance against summary

---

[8]Under this standard, a court must evaluate whether the fiduciary exercised "reasonable care and caution," looking at the "investments not in isolation, but in the context of the investment portfolio as a whole," and keeping in mind that "[n]o specific investment or course of action is, taken alone, prudent or imprudent." FLA. STAT. § 518.11(1)(a)-(b).  Importantly, this test "is one of conduct rather than resulting performance," such that "the fiduciary's decisions are to be judged under the facts and circumstances at the time of the decision." *Parker v. Shullman*, 983 So. 2d 643, 647 (Fla. Dist. Ct. App. 2008) (citation omitted).

judgment.  At the heart of the matter, the parties dispute what Donald

Meyer actually did with the $52,708.75 and $67,364.09 expenditures and

whether the expenditures actually benefitted Margaret.  Surrounding this

dispute is whether Donald was authorized under the Trust Agreement or

was otherwise authorized to make these expenditures, and whether he

exercised good faith in using, expending, and administering the Trust

assets.  And while skeptical of Donald and Linda's broad reading and

application of the Trust Agreement language, the court is unable to

conclude at this juncture whether Donald exercised his obligations for the

actual benefit of the settlors during their lifetimes, whether he advanced the

interests of the Trust's beneficiaries, and whether he breached his duties

as trustee by self-dealing and misappropriating and mismanaging the

Trust's funds, investments, and property.  Lastly, notwithstanding Anthony

and Joseph's production of significant evidence demonstrating that Donald

failed to take the affirmative actions directed by the Agreement following

the settlors' deaths, there remains a question of fact—though quite

tenuous—as to whether he was justified or excused from doing so.

Therefore, due to these fundamental issues of fact, the court denies the

parties' motions for summary judgment on the claim for breach of fiduciary

duty and damages resulting therefrom.

However, as to Donald's flimsy arguments that Anthony and Joseph waived or should be estopped from asserting their right to hold him liable for certain expenditures or for otherwise breaching his fiduciary duties, the court rejects such arguments as unsupported by the facts and the law.

**D.    Conversion**

Under Florida law, conversion is defined as "an act of dominion wrongfully asserted over another's property inconsistent with his ownership therein." *Warshall v. Price*, 629 So. 2d 903, 904 (Fla. Dist. Ct. App. 1993) (internal quotation marks and citation omitted).  In other words, "conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Mayo v. Allen*, 973 So. 2d 1257, 1258-59 (Fla. Dist. Ct. App. 2008) (citations omitted).  However, conversion "may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (internal quotation marks and citation omitted).  In light of the evidence on record and the disputes of fact, which have been discussed at length, a reasonable jury could find that Donald and Linda tortiously converted funds

to which Anthony and Joseph had a right of possession.  Accordingly, the court denies the parties' summary judgment motions as to the claim of conversion.

## E.   Unjust Enrichment

A plaintiff seeking to prevail on a claim for unjust enrichment must prove that: "(1) [he] conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant ... voluntarily accepted and retained the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff."  *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) (internal quotation marks and citation omitted).  For reasons similar to those warranting denial of summary judgment for breach of fiduciary duty and conversion, the court concludes that material issues of fact exist which render Anthony and Joseph's unjust enrichment claim unfit for summary judgment.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Anthony and Joseph Meyer's motion for summary judgment (Dkt. No. 28) is **DENIED**; and it is further

21

**ORDERED** that Donald and Linda Meyer's motion for summary

judgment (Dkt. No. 31) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

June 25, 2010
Albany, New York

United States District Court Judge